**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA**

SHERRIE L. FEDERER and
KARAN NEAL, individually
and on behalf of others
similarly situated,

      **Plaintiffs,**

    v.                                      Civil Action No. 3:17-cv-00211

GENESIS ELDERCARE
REHABILITATION
SERVICES, LLC d/b/a
GENESIS REHAB SERVICES,

      **Defendant.**

## COMPLAINT

NOW COME Plaintiffs Sherrie L. Federer and Karan Neal, by and through their undersigned counsel, and file this Complaint against Defendant Genesis Eldercare Rehabilitation Services, LLC d/b/a Genesis Rehab Services making claims to recover unpaid overtime wages under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., individually and on behalf of others similarly situated as provided in 29 U.S.C § 216(b), stating as follows:

## PARTIES

1. Plaintiff Sherrie L. Federer ("Plaintiff Federer") is an individual residing in Barboursville, Cabell County, West Virginia.

2. Plaintiff Karan Neal ("Plaintiff Neal") is an individual residing in Hurricane, Putnam County, West Virginia.

3. Defendant Genesis Eldercare Rehabilitation Services, LLC d/b/a Genesis Rehab Services ("Defendant GRS") is a for-profit limited liability company, organized pursuant to the laws of the State of Pennsylvania, and authorized to do business in the State of West Virginia.

4. On or about March 14, 2016, Genesis Eldercare Rehabilitation Services, Inc. merged with and into Defendant GRS, and Defendant GRS became the surviving entity.

5. Upon the merger of Defendant GRS and Genesis Eldercare Rehabilitation Services, Inc., Defendant GRS assumed and/or retained all liabilities of Defendant GRS and Genesis Eldercare Rehabilitation Services, Inc., including all liabilities arising from the claims made in this Complaint which occurred prior to the merger. (Accordingly, both Defendant GRS and Genesis Eldercare Rehabilitation Services, Inc. are referred to collectively in the remainder of this Complaint as "Defendant GRS.")

6. Defendant GRS has a principal office located at 101 East State Street, Kennett Square, Pennsylvania 19348.

7. Defendant GRS provides physical therapy, occupational therapy, speech therapy, respiratory therapy, and wellness services, primarily to the older adult population, in skilled nursing centers, assisted living facilities, independent living facilities, hospitals, home health companies, adult day care programs, and outpatient clinics.

8. Defendant GRS employs over 18,000 therapists in more than 1,700 locations in 45 states and the District of Columbia.

9. In West Virginia, Defendant GRS employs physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists at approximately 35 facilities owned and operated by Defendant GRS's corporate parent, Genesis Healthcare, Inc. or other entities affiliated with Genesis Healthcare, Inc.

10. At all relevant times, Defendant GRS was acting through its agents, supervisors, directors, officers, employees and assigns and within the full scope of such agency, office, employment, or assignment.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiffs' claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") pursuant to 28 U.S.C. § 1331 because this claim arises under the laws of the United States.

12. At all relevant times, Plaintiffs, and similarly situated employees, were employees of Defendant GRS at facilities in West Virginia owned and/or operated by Defendant GRS, Genesis Healthcare, Inc., or other entities affiliated with Genesis Healthcare, Inc., including the Valley Center, a transitional care unit located in South Charleston, Kanawha County, West Virginia, and the Heritage Center, a skilled nursing facility located in Huntington, Cabell County, West Virginia.

13. Venue is appropriate in the U.S. District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(b) because Defendant GRS resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## FACTS

### (Plaintiff Federer)

14. Plaintiff Federer was hired by Defendant GRS on or about March 15, 2002 as a Licensed Physical Therapy Assistant ("PTA").

15. At all times during Plaintiff Federer's employment, Defendant GRS paid Plaintiff Federer an hourly wage and treated Plaintiff Federer as a non-exempt employee entitled to minimum wages and overtime wages under the FLSA.

16. During the relevant time period, Plaintiff Federer was scheduled for 8 hour shifts, five days per week, for a total of 40 work hours per workweek. Patients to be treated by Plaintiff Federer were scheduled for most, if not all, of Plaintiff Federer's scheduled work hours.

17. In accordance with the Job Description of Defendant GRS for "Physical Therapist Assistant", as a PTA, Plaintiff Federer "provide[d] physical therapy treatments to patients to facilitate increased independence and functioning under the supervision of a Licensed Physical Therapist." Integral to Plaintiff Federer's treatment of patients was the timely completion of clinical notes regarding the patients' treatment. Indeed the PTA Job Description states the PTA "[m]aintains appropriate and timely documentation for all patients treated."

18. The volume and scheduling of patients throughout Plaintiff Federer's work day did not allow sufficient time for Plaintiff Federer to complete the clinical notes on the patients she treated during her scheduled work day.

19. Because Plaintiff Federer could not complete her clinical notes during her scheduled work day, she often completed her clinical notes during her unpaid lunch break, after her scheduled work day, or on weekends.

20. During the relevant time period, Plaintiff Federer's regular rate of pay was $27.00 per hour, and her overtime rate was $40.50 per hour.

21. Plaintiff Federer worked an average of six overtime hours per workweek completing her clinical notes during her unpaid lunch break, after her scheduled work day, and/or on weekends for which she was not paid.

22. Defendant GRS and its managers observed Plaintiff Federer working to complete her clinical notes during her unpaid lunch breaks and after her scheduled work hours.

23. Defendant GRS and its managers were also aware that the high volume scheduling of patients did not allow Plaintiff Federer to complete her clinical notes during her scheduled work hours.

24. Review of Plaintiff Federer's clinical notes by Defendant GRS and its managers in the normal course of business would have revealed that Plaintiff Federer often electronically signed her clinical notes after her scheduled work hours, during times for which Plaintiff Federer was not being compensated.

25. Defendant GRS failed to pay Plaintiff Federer overtime wages for all overtime hours worked.

### (Plaintiff Neal)

26. Plaintiff Neal was hired by Defendant GRS in or about January 2011 as a Licensed Physical Therapy Assistant ("PTA").

27. At all times during her employment, Defendant GRS paid Plaintiff Neal an hourly wage and treated Plaintiff Neal as a non-exempt employee entitled to minimum wages and overtime wages under the FLSA.

28. During the relevant time period, Plaintiff Neal was scheduled for 8 hour shifts, five days per week, for a total of 40 work hours per workweek. Patients to be treated by Plaintiff Neal were scheduled for most, if not all, of Plaintiff Neal's scheduled work hours.

29. In accordance with the Job Description of Defendant GRS for "Physical Therapist Assistant", as a PTA, Plaintiff Neal "provide[d] physical therapy treatments to patients to facilitate increased independence and functioning under the supervision of a Licensed Physical Therapist." Integral to Plaintiff Neal's treatment of patients was the timely completion of clinical notes

regarding the patients' treatment. Indeed the PTA Job Description states the PTA "[m]aintains appropriate and timely documentation for all patients treated."

30. The volume and scheduling of patients throughout Plaintiff Neal's work day did not allow sufficient time for Plaintiff Neal to complete the clinical notes on the patients she treated during her scheduled work day.

31. Because Plaintiff Neal could not complete her clinical notes during her scheduled work day, she often completed her clinical notes during her unpaid lunch break, after her scheduled work day, or on weekends.

32. During the relevant time period, Plaintiff Neal's regular rate of pay was $26.08 per hour, and her overtime rate was $39.12 per hour.

33. Plaintiff Neal worked an average of ten overtime hours per workweek completing her clinical notes during her unpaid lunch break, after her scheduled work day, and/or on weekends for which she was not paid.

34. Defendant GRS and its managers observed Plaintiff Neal working to complete her clinical notes during her unpaid lunch breaks and after her scheduled work hours.

35. Defendant GRS and its managers were aware also aware that the high volume scheduling of patients did not allow Plaintiff Neal to complete her clinical notes during her scheduled work hours.

36. Review of Plaintiff Neal's clinical notes by Defendant GRS and its managers in the normal course of business would have revealed that Plaintiff Neal often electronically signed her clinical notes after her scheduled work hours, during times for which Plaintiff Neal was not being compensated.

37. Defendant GRS failed to pay Plaintiff Neal overtime wages for all overtime hours worked.

**(Similarly Situated Employees)**

38. During the relevant time period, Defendant GRS employed physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists throughout facilities in West Virginia.

39. Like Plaintiffs Federer and Neal, these physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists were paid an hourly wage and treated by Defendant GRS as non-exempt employees entitled to minimum wages and overtime wages under the FLSA.

40. Like Plaintiffs Federer and Neal, during the relevant time period, these physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists were scheduled for 8 hour shifts, five days per week, for a total of 40 work hours per workweek. Patients to be treated by these physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists were scheduled for most, if not all, of their scheduled work hours.

41. Like Plaintiffs Federer and Neal, the timely completion of clinical notes regarding the patients' treatment was integral to the treatment of patients by these physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists.

42. Like Plaintiffs Federer and Neal, the volume and scheduling of patients throughout the work day of these physical therapists, physical therapy assistants, occupational therapists,

occupational therapy assistants, speech therapists, and respiratory therapists did not allow sufficient time for the completion of the clinical notes on the patients they treated during their scheduled work day.

43. Because these physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists could not complete their clinical notes during their scheduled work day, they often completed their clinical notes during their unpaid lunch break, after their scheduled workday, or on weekends.

44. Defendant GRS and its managers observed the physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists working to complete their clinical notes during their unpaid lunch breaks and after their scheduled work hours.

45. Defendant GRS and its managers were also aware that the high volume scheduling of patients did not allow the physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists to complete their clinical notes during their scheduled work hours.

46. Review of the clinical notes of the physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists by Defendant GRS and its managers in the normal course of business would have revealed that the physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists often electronically signed their clinical notes after their scheduled work hours, during times for which the physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists were not being compensated.

47. Defendant GRS failed to pay the physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, and respiratory therapists overtime wages for all overtime hours worked.

**COUNT ONE: CLAIM FOR UNPAID OVERTIME WAGES UNDER THE FAIR LABOR STANDARDS ACT**

48. Plaintiffs incorporate by reference Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Defendant GRS is an "employer" as defined in the Fair Labor Standards Act of 1938 ("FLSA") at 28 U.S.C. § 203.

50. Defendant GRS is an "enterprise engaged in commerce" as defined in the FLSA at 28 U.S.C. § 203.

51. Defendant GRS was required to pay Plaintiff Federer, Plaintiff Neal, and all similarly situated employees, overtime wages at a rate of one and one-half times Plaintiffs' and the similarly situated employees' regular rates for all hours worked in excess of 40 hours in a work week pursuant to the FLSA, 28 U.S.C. § 207.

52. Defendant GRS failed to pay Plaintiff Federer, Plaintiff Neal, and all similarly situated employees all overtime wages due and owing to Plaintiffs and the similarly situated employees in violation of the FLSA, 28 U.S.C. § 207.

53. Defendant GRS's failure to pay overtime wages in violation of the FLSA was willful. Defendant GRS's willful violation of the FLSA is evidenced by: the observation of Defendant GRS and its managers of the completion of clinical notes by Plaintiff Federer, Plaintiff Neal, and all similarly situated employees during unpaid lunch breaks and after scheduled work hours; the knowledge that the high volume scheduling of patients did not allow Plaintiff Federer, Plaintiff Neal, and all similarly situated employees adequate time to complete clinical notes during

9

work hours; and Defendant GRS's and its managers' willfully ignoring the evidence of off the clock work by Plaintiff Federer, Plaintiff Neal, and all similarly situated employees gleaned from comparing the employees' time records with the times of employees' electronic signatures on clinical notes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of similarly situated employees, pray for the following relief:

(a) That this Court certify this action as an FLSA collective action and certify a class of employees similarly situated to Plaintiffs Federer and Neal;

(b) That Plaintiffs Federer and Neal be designated as the collective class representatives;

(c) That they and the certified class may have a trial by jury;

(d) That they and the certified class be awarded all damages provided by law, including but not limited to, unpaid overtime wages;

(e) That they and the certified class be awarded liquidated damages as provided by the FLSA;

(f) That they and the certified class be awarded attorneys' fees and costs; and

(g) That they and the certified class be awarded such other relief as this Court may deem as just and equitable.

                                        **SHERRIE L. FEDERER and**
                                        **KARAN NEAL,**
                                        By Counsel

_____*/s/ Mark Goldner*_____
Mark Goldner, Esq. (WV State Bar No. 11286)
Maria W. Hughes, Esq. (WV State Bar No. 7298)
HUGHES & GOLDNER, PLLC
10 Hale Street, Fifth Floor
Charleston, WV 25301
TEL: (304) 400-4816/FAX: (304) 205-7729
mark@wvemploymentrights.com
maria@wvemploymentrights.com